UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHESTERFIELD EXCHANGE, LLC,

    Plaintiff and counter-defendant,

v.                                                                                         Case Number 07-12254
                                                                                          Honorable David M. Lawson

SPORTSMAN'S WAREHOUSE, INC.,

    Defendant, counter-plaintiff, and
    third-party plaintiff,

v.

DEVELOPERS DIVERSIFIED REALTY CORP.,

    Third-party defendant.

_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION TO STRIKE JURY DEMAND**

      The question presented by the plaintiff's motion to strike a jury demand filed by the defendant, Sportsman's Warehouse, Inc., is whether a lease provision waiving a jury trial is vitiated by Sportsman's allegations that it was fraudulently induced to enter the lease, despite the absence of any allegations that the jury trial waiver provision itself was induced by fraudulent representations. The parties argued their positions in their briefs and at oral argument held on December 13, 2007. Although there is no Sixth Circuit precedent on point, the Court believes that the Sixth Circuit would follow the lead of two other Circuits that have addressed the issue and would hold that, as with contractual arbitration clauses, a claim that a contract is void as induced by fraud is not sufficient to invalidate a jury waiver contained therein where the alleged fraud does not relate

to the jury waiver provision itself. Therefore, the Court will grant the plaintiff's motion and strike the jury demand.

I.

According to the pleadings, Sportsman's is a nationwide "big box" retailer of hunting, fishing, and camping gear, with over sixty stores across the country. In mid-2004, Chesterfield Exchange, LLC caused its agent, Developers Diversified Realty Corporation, to contact Sportsman's and solicit its agreement to lease retail space in Chesterfield, Michigan. The proposed site was in a new retail plaza known as "Chesterfield Marketplace," which Chesterfield represented would house a Wal-Mart store (later to be expanded into a Super Wal-Mart) and two other "big box" retailers. Although Sportsman's was to operate the store, Chesterfield would construct the physical premises. For slightly over a year, Chesterfield and Sportsman's tried to negotiate an agreement, but the process was complicated by a number of issues. Ultimately, Sportsman's decided to abandon the negotiations.

However, on January 24, 2006, Diversified's vice-president called Sportsman's CEO and informed him that Sam's Club had agreed to be a tenant. This information apparently rekindled Sportsman's interest in the site. However, Sam's Club wanted the space that originally had been offered to Sportsman's, and Diversified told Sportsman's that it would have to accept a new location in the shopping center and change its building design. Sportsman's agreed.

On July 11, 2006, Sportsman's and Chesterfield executed a lease. The lease term was to run for fifteen years following the opening of the store, with Sportsman's to retain the option to renew for twenty additional years. The rent was to be based on the square footage of the store, which, as construction had not yet begun, was still to be determined. The agreement specified that

Chesterfield would be responsible for building the "pad" and constructing the building, and Sportsman's would be responsible for retaining an architect. Among several other legal provisions, the lease contained a waiver of the right to a trial by jury. It reads as follows:

> 43. **Waiver of Jury Trial**. Landlord and Tenant waive trial by jury in any action brought by either of them against the other on all matters arising out of this Lease or the use and occupancy of the Premises.

Compl., Ex. A, Lease at ¶ 43.

On March 15, 2007, Sportsman's CEO called Diversified to inquire as to the progress on the construction of the Sam's Club and the expansion of Wal-Mart to a Super Wal-Mart. For the first time, Diversified informed Sportsman's that a Sam's Club would not be built and the Wal-Mart store would not be expanded. According to Sportsman's, Chesterfield and Diversified knew before Sportsman's executed the lease that Sam's Club would not be building at the plaza and that Wal-Mart would not be expanding.

On March 16, 2007, Sportsman's notified Chesterfield in writing of its intention not to perform its obligations under the lease. Following its demand to Sportsman's for performance, Chesterfield commenced the present action for breach of contract in the Macomb County, Michigan circuit court on April 25, 2007. Sportsman's removed the case to this Court.

.According to Chesterfield, it performed all of its obligations under the lease prior to Sportsman's repudiation, and it asserts claims for breach of contract seeking (1) specific performance, (2) damages, and (3) a declaratory judgment. Based on its belief that the agreement was induced by fraud, Sportsman's has filed a counterclaim against Chesterfield and a third-party complaint against Diversified. Its fraud allegations are as follows:

12. Chesterfield, personally and through its agent [Diversified], made oral and written representations to Sportsman's regarding Sam's Club and Super Wal-Mart as alleged above.

13. Those oral and written representations were false as described above.

14. The oral and written representations made by Chesterfield and [Diversified] as alleged herein have to do with past or present material facts that were susceptible of knowledge.

15. Chesterfield and [Diversified] made the oral and written representations knowing them to be false and with intent to deceive and defraud Sportsman's and to induce Sportsman's to enter the Lease.

16. Chesterfield and [Diversified] failed to correct their oral and written misrepresentations with intent to deceive and defraud Sportsman's and to induce Sportsman's to enter the Lease.

17. Sportsman's, justifiably believing the oral and written representations to be true and in reliance thereon, was induced to enter the Lease.

18. Sportsman's would not have entered into the Lease and would not have incurred more than $100,000.00 in costs attendant to the re-design of its proposed building from an "end entry" building to a "side entry" building if it had known the truth of the misrepresented facts recited above.

19. As a direct and proximate result of the oral and written fraudulent misrepresentations made by Chesterfield and [Diversified], Sportsman's has suffered damages in an amount to be determined at trial in excess of $75,000.00.

Counterclaim and Third-Party Compl. at ¶¶ 12-19. Sportsman's claims for negligent misrepresentation and recision proceed along the same basic theory. There are no allegations that Chesterfield fraudulently induced Sportsman's to agree to waive a jury trial.

Chesterfield did not demand a jury trial, but Sportsman's did. Chesterfield moved to strike the jury demand on September 27, 2007.

II.

The right to a jury trial in civil cases is guaranteed by the Seventh Amendment. Although this case is before the Court on diversity jurisdiction, the question of one's right to a jury trial, even where that right has been addressed through a contractual provision, is governed by federal law, not state law. *K.M.C. Co., Inc. v. Irving Trust Co.*, 757 F.2d 752, 755 (6th Cir. 1985). As the Sixth Circuit has explained, "the constitutional right to jury trial may only be waived if done knowingly, voluntarily and intentionally" and "whether this standard [has been] met in a given case is a constitutional question separate and distinct from the operation of substantive rules of contract law." *Id.* at 755-56. However, although another Circuit has held otherwise, *see Leasing Serv. Corp. v. Crane*, 804 F.2d 828, 833 (4th Cir. 1986), "in the context of an express contractual [jury] waiver the objecting party should have the burden of demonstrating that its consent to the provisions was not knowing and voluntary," *K.M.C.*, 757 F.2d at 758.

Sportsman's insists that it has meet its burden through its allegations that it was fraudulently induced to enter the lease by Chesterfield's knowing misrepresentations about Sam's Club's intentions to take a place at the shopping center. Sportsman's reasons that since Chesterfield's fraud voids the lease in its entirety, the jury trial waiver language contained therein cannot survive, and it should not be bound by it. Recognizing that the fraud allegations do not stand proven at this point in the proceedings, Sportsman's proposes that the case ought to be allowed to proceed to trial with a jury deciding the fraudulent-inducement claim, and if the jury determines that the lease was *not* procured by fraud, the Court can decide all remaining issues.

Chesterfield states that Sportsman's allegations are not sufficient even to support the novel procedural approach Sportsman's proposes because there is no allegation that the jury trial waiver

provision was procured by fraud. It points to *Telum, Inc. v. E.F. Hutton Credit Corp.*, 859 F.2d 835 (10th Cir. 1988), and *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171 (2d Cir. 2007), in support of that argument.

In *Telum*, the plaintiff contended that it was fraudulently induced to enter a lease of an oil drilling rig based on a misrepresentation that the rig was finished and ready for use when in fact it was not. The trial court refused to enforce the jury waiver provision in the lease, and the defendant appealed the jury verdict for the plaintiff. When the court of appeals addressed the argument that the plaintiff's broad claim of fraud vitiated the jury waiver provision, the court analogized to the cases challenging contractual arbitration clauses on the same basis, particularly *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967), in which the Supreme Court held that "if the claim is fraud in the inducement of the arbitration clause itself – an issue which goes to the 'making' of the agreement to arbitrate – the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally." *Id.* at 403-04 (footnote omitted). The *Telum* court answered the argument that the analogy to the arbitration cases is imperfect because of the fundamental nature of the right to a jury trial (an argument also made by Sportsman's in the present case), stating, "This analogy is especially appropriate here because submission of a case to arbitration involves a greater compromise of procedural protections than does the waiver of the right to trial by jury." *Telum*, 859 F.2d at 838. The court ultimately held "that the trial judge erred in ruling that general allegations of fraud are sufficient to invalidate a jury waiver provision." *Ibid.*

Sportsman's criticizes *Telum*'s reliance on the contractual arbitration clause case analogy because of the national policy that favors arbitration as reflected in the Federal Arbitration Act,

whereas a policy that actually favors jury trials is embodied in the Seventh Amendment. The *Telum* court dismissed that argument as follows:

> Although this result was based on language found in § 4 of the United States Arbitration Act of 1925, the Court noted that "the purpose of Congress in 1925 was to make arbitration agreements as enforceable as other contracts, but not more so." *Prima Paint Co. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967). Thus, according to the Court, to make enforceability of arbitration clauses consistent with other contracts, arbitration could be suspended if fraud were specifically alleged to have induced the making of the arbitration agreement.

*Id.* at 837 n.1.

The Second Circuit recently followed *Telum* in *Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 188 (2d Cir. 2007) ("We join the Tenth Circuit in holding that unless a party alleges that its agreement to waive its right to a jury trial was itself induced by fraud, the party's contractual waiver is enforceable vis-à-vis an allegation of fraudulent inducement relating to the contract as a whole."). The court acknowledged that there is a presumption favoring trial by jury, although it recognized that the right can be waived if the waiver is knowing, intentional, and voluntary. In using the contractual arbitration clause cases as a template for contractual jury trial waivers, the court reconciled the conflict between the presumption against jury waiver and the presumption in favor of arbitration as follows:

> *Telum* drew an analogy to the arbitration context, in which the Supreme Court has held that an agreement to arbitrate is effective with respect to claims of fraudulent inducement that relate to the contract generally, but not to the agreement to arbitrate specifically. . . . Although we do not disagree with appellant that the arbitration cases rely on a federal statutory scheme favoring arbitrability that runs contrary to the presumption against waiver applicable here, we think the analogy persuasive as a matter of logic.
>
> A promise to bring proceedings before a judge, not a jury, is akin to an agreement to arbitrate in that both express the parties' consent as to how to handle differences that may arise. Indeed, arbitration represents a more dramatic departure from the judicial forum than does a bench trial from a jury trial. . . . If one litigant alleges that

-7-

an agreement's dispute resolution provision itself was procured by fraud, the fairest course is to afford that litigant the protections he would have enjoyed had he never been fraudulently induced to forsake them by contract. If, on the contrary, the litigant does not challenge the provision as being the product of fraud, we see no reason to replace the agreed upon mode of dispute resolution with another.

*Id.* at 188 (citations omitted).

This Court is persuaded that the Sixth Circuit would follow this line of thinking when dealing with broad fraud allegations against contracts that contain jury trial waivers. First, the court has held unequivocally that a contract action asserting fraud in the inducement is not sufficient to implicate an arbitration clause where there is no claim of fraud specifically relating to that clause. *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 575-76 (6th Cir. 2003). Second, in the case of parties with equal bargaining power, the court has not hesitated to find that an agreement to waive a jury trial can satisfy the requirement that constitutional rights can be waived if the waiver is knowingly, intelligently, and voluntarily made. *K.M.C.*, 757 F.2d at 756 (holding that "the Magistrate was correct in applying the knowing and voluntary standard in this instance"). Third, the court has relied on the rationale of *K.M.C.* in its decisions holding that the validity of a waiver of trial rights must be measured against the knowing and voluntary standard. *See, e.g., Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 381 (6th Cir. 2005) (where the court looked to *K.M.C.* to support its conclusion that the "knowing and voluntary standard" applied in evaluating the validity of arbitration clauses). Fourth, the court has held that other clauses that are severable from a contract challenged on the ground of fraud in the inducement can remain valid, provided that there is no "well-founded claim of fraud in the inducement of the clause itself, *standing apart from the whole agreement.*" *Moses v. Business Card Exp., Inc.* 929 F.2d 1131, 1138 (6th Cir. 1991) (addressing a forum selection clause).

This Court concludes, therefore, that business entities of equal bargaining power that enter into written agreements that contain jury trial waiver provisions knowingly and voluntarily waive their right to a jury trial under the Seventh Amendment absent exceptional circumstances. Although such a waiver may be attacked on the ground of fraud, the fraud allegation must be well-founded and state that the inclusion of that *particular* clause in the contract was the product of fraud or coercion.

Sportsman's has cited cases from the New York state courts that suggest a procedure for dealing with cases in which a jury may decide the fraudulent-inducement claim and then, if it is determined that the lease was *not* procured by fraud, the Court would decide all remaining issues. *See Bank of New York v. Royal Athletic Industries, Ltd.*, 637 N.Y.S.2d 478, 479 (N.Y. App. Div. 1996); *Federal Housecraft, Inc. v. Faria*, 216 N.Y.S.2d 113, 114 (N.Y. App. Div. 1961)). After reviewing these cases, the Court must reject their rationale because of controlling federal authority dealing with jury trial waivers, their failure to recognize that an agreement as to the mode of resolving a controversy may be completely unaffected by a general claim of fraud in the inducement, and the fact that an *allegation* of fraud in the inducement should not be treated as *proof* of such fraud. That appears to be the reasons that the Southern District of New York recently declined to follow their rationale. *See Russell Stanley Holdings, Inc. v. Buonanno*, 327 F. Supp. 2d 252, 257 (S.D.N.Y. 2002). That is not to say that the procedure may merit consideration if a party presents a well-founded claim that the jury trial waiver clause itself was procured by fraud. However, that is not the case here.

The Court finds that Sportsman's knowingly, intelligently, and voluntarily waived the right to have a jury resolve its disputes relating to the lease with Chesterfield. Sportsman's has not

alleged that this waiver was procured by fraud. Therefore, the Court finds that the parties must be bound by their agreement to keep their disputes from a group of fellow citizens and instead submit them to the Court to resolve. Sportsman's jury demand contravenes that agreement. Therefore it must be stricken.

III.

The Court concludes that the jury trial waiver contained in the disputed lease must be enforced.

Accordingly, it is **ORDERED** that the motion to strike the jury demand by plaintiff Chesterfield Exchange, LLC [dkt # 22] is **GRANTED** and the jury demand is **STRICKEN**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: December 18, 2007

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 18, 2007.

s/Felicia M. Moses
FELICIA M. MOSES